## County Court—Schuyler County.

*April*, 1885.

## PEOPLE *v.* CUYKENDALL.

### LARCENY.—POST-DATED CHECK.

The giving of a check by a person upon a bank at which he has no
deposit or credit, is not larceny under § 529 of the Penal Code,
unless there is a willful intent to defraud.

Defendant paid a debt by a post-dated check, stating that he did not
want it presented till the day of its date, as he had bought certain
property; that therefore he was a little short, and that he had paper
out on which he expected to get some money. *Held,* not larceny
under § 529 of the Penal Code.

RETURN to a writ of *habeas corpus* directed to the sheriff of
Schuyler county.

This case came up on the return of a writ of *habeas corpus*
issued and directed to the sheriff of Schuyler county. The
return of the sheriff showed that the defendant was held to
await the action of the grand jury upon a charge of grand
larceny in the second degree. The defendant was apprehended
upon a warrant issued by Justice Starkey, a justice of the
peace, of the town of Dix, and after examination was held
upon the charge.

The undisputed evidence before the examining magistrate
showed, that a few days previous to January 24, 1885, the de-
fendant made a contract with one Howard, the complainant,
for a quantity of potatoes to be delivered by the complainant
at Reading Center Station, on the S. G. & C. Railroad. Noth-
ing was said as to when the potatoes should be paid for. Upon
January 24 the delivery of the potatoes was completed, and
the son of the complainant, acting as agent for his father, took
a statement of the number of bushels delivered to the defend-
ant at his place of business in Watkins, and presented it to the
defendant. The amount was figured up, and a check upon the
Farmers' and Merchants' Bank of Watkins, was drawn up and

signed by the defendant, and delivered by him to the complainant's son, for the sum of $175.60. This was on Saturday, the 24th, and the check was post-dated to Monday, January 26.

At the time of the delivery of the check to the complainant's son, the defendant stated to him, as testified to by said son: "That he did not want the check presented at the bank until Monday; that he had bought a quantity of dried plums, and that made him a little short; I think he stated he had some paper out; I judged from his remarks that he had very little money in the bank, or, if he had money there, he desired to use it another way. When I took the check, from what was said, I did not expect there was money enough at the bank to pay the check." Upon his return home, the son delivered the check to his father, who received it.

It also appeared that the defendant, at this time, had two drafts out, which he had drawn on parties in New York city, upon consignment of produce—one for $155.00, and one for $170.00. The draft for $155.00 had been cashed by the Farmers' and Merchants' Bank, and the one of $170.00, or its proceeds, had been pledged to the bank as security for the payment of the $155.00 draft. Neither of these drafts had been paid at the time of giving the check, on January 24.

The check was presented at the Farmers' and Merchants' Bank on Monday, January 26, and payment was refused, the drafts not having been paid, and the defendant having no funds in the bank.

It was claimed by the counsel for the people that under this state of facts the crime of grand larceny in the second degree is made out under sections 529 and 531 of the Penal Code.

*W. Robertson,* district attorney (*O. T. Hurd,* of counsel), for the people.

*W. F. Bishop,* for defendant.

SUNDERLIN, J.—Section 529 of the Penal Code is as follows: " A person, who willfully, with intent to defraud, by

color or aid of a check or draft, or order for the payment of money, or the delivery of property, when such person knows that the drawer or maker thereof is not entitled to draw on the drawee for the sum specified therein, or to order the pay ment of the amount, or delivery of the property, although no express representation is made in reference thereto, obtains from another any money or property, is guilty of stealing the same, and punishable accordingly."

Section 531 provides that, " A person is guilty of grand larceny in the second degree who, under circumstances, not amounting to grand larceny in the first degree, in any manner specified in this chapter, steals or unlawfully obtains or appropriates :

" 1. Property of the value of more than $25.00, &c."

To make the defendant guilty of grand larceny in the second degree, under these two sections, it must appear, that he willfully, with intent to defraud, by color or aid of the check in question, obtained delivery of the potatoes from Howard to him.

The undisputed evidence shows that the purchase and delivery of the potatoes were prior to the making of the check, and no time having been fixed by the terms of the sale, when they were to be paid for, the pay for them was due immediately upon delivery, and had the defendant refused to pay, the complainant might have reclaimed and taken possession of them ; and had the defendant given the complainant or his agent a check for them, and the check had been accepted, without the defendant informing him of the condition of his bank account, or his financial condition, when he knew he was not entitled to draw upon the bank for that amount, I think the case would clearly have been made out. But the case on the part of the people falls far short of this. The potatoes had been delivered at the place agreed upon, their amount and value ascertained, and the complainant had the right to demand immediate payment ; but he did not do this, he not only accepts a check on the bank, post-dated to January, 26, which of itself was at least a strong intimation that the defendant had not at the time of making the check, sufficient funds in the bank to pay it, but he received the check accompanied by the defendant's statement

that he did not want it presented until the following Monday, as " he had bought a quantity of dried plums, and that made him a little short, and that he had paper out that he expected to get some money on," referring undoubtedly to the drafts drawn by him on the parties in New York.

To constitute a crime under section 529, the giving of the check must have been done "*willfully, with intent to defraud,*" and how can this be said of the defendant? He informed the complainant's agent of the true state of his bank account, and from such information the agent testified, " that he judged from defendant's remarks that he had very little money in the bank, or if he had money there, he desired to use it some other way; that when he took the check, from what was said he did not expect there was money enough at the bank to pay it." This evidence was given by the prosecution, or rather was drawn out on cross-examination of the people's main witness—the agent himself, and it is nowhere contradicted, or its force in, any way weakened.

The mere giving a check by a person upon a bank, at which he has no deposit or credit to pay, does not constitute a crime under section 529, but the giving of the check must be with a willful intent to defraud, and there is not the slightest evidence in this case of any such intent, or from which fraud could be imputed or surmised.

The section is a new one in our criminal law, and undoubtedly was intended to make the giving of a check, &c., when the person giving it " knows that the drawer or maker thereof is not entitled to draw on the drawee for the sum specified therein, although no express representation is made in reference thereto," tantamount to a representation, that the drawer of such check is entitled to draw on the drawee for the sum specified; or in other words, that the silence of the party making and delivering such check amounts to a declaration that he has money in the bank upon which he draws to pay it; and in the absence of explanatory proof, such silence may be taken and presumed as a willful intent to defraud. But when the drawer of such check notifies the party receiving it, at the time of its delivery, that he has not sufficient funds in bank to pay it, no such presumption of fraud can arise.

It is the *fraudulent concealment* of the impoverished con-
dition of the drawer's bank account, that constitutes the crime
under section 529, and not *the truthful disclosure* of its condi-
tion.    If A. says to B., I will give you $200.00 for your horse
if you will deliver him at my stable to-morrow, and B. says, I
will do it, and on the next day delivers the horse at the stable
and goes to A.'s office and informs him of the delivery and
demands his pay, and thereupon A. draws his check upon a
bank for the amount and delivers it to B. with the statement
that he has not a dollar in the bank, but that he has paper
coming due him at the bank the following week, from which
he expects money to meet the check, and B. receives the check
upon this statement, and the paper of A. is not paid at maturity,
the check consequently not met, there is no fraud, no crime
on the part of A.   The transaction amounts to nothing more or
less, than B. waiving immediate payment, which he had the
right to demand and insist upon, and relying upon the credit
and responsibility of A. for the purchase price of the horse.

The same principle applies in this case.   When the com-
plainant's agent accepted of the defendant a post-dated check,
with the information that there was not sufficient funds of his at
the bank upon which it was drawn to pay it, and that he had
paper out that he expected to get money on, the transaction
was simply waiving the right of the complainant to have his
pay or his property in immediately, and extending the time of
payment upon the credit and responsibility of the defendant—
especially as the information was true and not false or fraudu-
lent.

So far as I am advised, this is a new question under this
new section of the Penal Code; but to me its meaning is so
plain as to render it unnecessary to cite authorities upon
abstract or other principles of law, for the purpose of properly
construing it.

The case is barren of any of the elements of crime or crim-
inal intent, and the defendant must be discharged from custody.